**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**WANDA M.,**

                            **Plaintiff,**

**v.**
                                                  **20-CV-961**

**COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 18. Wanda M. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 13, 16. For the following reasons, Plaintiff's motion (Dkt. No. 13) is denied, and the Commissioner's motion (Dkt. No. 16) is granted.

## BACKGROUND

On March 2, 2017, Plaintiff filed for a period of disability and Disability Insurance Benefits ("DIB") alleging that she became disabled on December 31, 2011, by back problems, an irregular heartbeat, right hand damage, high blood pressure,

asthma, and a stroke.  Tr. at 49, 54, 121-22, 136.[1]  Plaintiff's claim was denied at the initial level, and she requested review.  Tr. at 57-61, 69-70.  Administrative Law Judge Dale Black-Pennington ("the ALJ") conducted a hearing on May 8, 2019.  Tr. at 29-47.  Plaintiff, who was represented by counsel, testified as did a vocational expert.  Tr. at 29-47.  On August 6, 2019, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant period.  Tr. at 12-23.  The Appeals Council denied Plaintiff's request for review and this action followed.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

To receive DIB under the Act, a claimant must furnish evidence establishing that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), (d)(5)(A).  Moreover, for Plaintiff to qualify for DIB, her disability must have commenced at a time when she met the insured status requirements as provided by the Act.  42 U.S.C. § 423(a)(1)(A) and (c)(1); 20 C.F.R. §§ 404.130, 404.315(a).  Here, Plaintiff only met these requirements through December 31, 2013.  Tr. at 17.

The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner.  20 C.F.R. § 404.1527(d).  The Commissioner has established a five-step sequential evaluation for adjudication of

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 10.

disability claims, set forth at 20 C.F.R. § 404.1520.  If a claimant is not disabled at any point of the sequential analysis, the claim will not be reviewed any further.  20 C.F.R. § 404.1520(a).  The claimant bears the burden at steps one through four of the analysis of showing that she had a severe impairment(s) that prevented her from performing her past relevant work.  See 20 C.F.R. §§ 404.1520(c)-(f), 404.1560(b); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)).  Only if the claimant cannot return to her past relevant work does the burden shift to the Commissioner at the fifth step to show that the claimant can perform other work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(g); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Berry*, 675 F.2d at 467.3

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Section 405(g) limits the scope of the Court's review to "whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard."  *Green-Younger v. Barnhart*, 335 F.3d 99, 105 (2d Cir. 2003) (internal citations and quotations omitted).

Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard,

3

even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez*, 77 F.3d at 46-47; *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 31, 2011, through her date last insured, December 31, 2013. Tr. at 17. The ALJ concluded at step two that through the date last insured, Plaintiff had the following medically determinable impairments: alcohol abuse, asthma, hypertension, right knee injury, and a history of hand injury. Tr. at 17. However, the ALJ found that none of these impairments were

4

severe, singly or in combination, because they did not significantly limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months.  Tr. at 17-22.  Because the ALJ found no severe impairments, he concluded that Plaintiff was not disabled during the relevant period.  Tr. at 22.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 13, 16.  Plaintiff argues that the ALJ erred in finding that Plaintiff had no severe impairments at step two, and in failing to develop the medical record.  Having reviewed the record in its entirety, this Court finds that the ALJ's conclusions are supported by substantial evidence and that remand is not warranted.

**Severe Impairments**

An impairment or combination of impairments "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activity."  20 C.F.R. § 404.1522; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  "Basic work activities" are defined as the "abilities and aptitudes necessary to do most jobs," and include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522(b).  An impairment is not severe "when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work."  Social Security Ruling (SSR)

85-28.  Plaintiff bears the burden of proving a severe impairment.  *See Yuckert*, 482 U.S. at 138.

**Mental Impairments**

The ALJ found that Plaintiff's various medically determinable impairments were not severe and/or did not meet the durational requirements.  First, the ALJ found that although Plaintiff apparently abused alcohol, her abuse did not significantly limit her ability to perform basic work activity.  Tr. at 19.  In so finding, the ALJ acknowledged that Plaintiff was hospitalized in September 2012 due to stroke-like symptoms. Tr. at 19.  Specifically, Plaintiff presented to her primary care provider, and then to the emergency room, with complaints of left-sided facial and arm numbness, slurred speech, headaches, and intermittent eye wandering.  Tr. at 21 (referring to Tr. at 182, 250-51).  Plaintiff was hospitalized from September 21-24, 2012 for what was ultimately determined to be a Transient Ischemic Attack ("TIA"). [2]  Upon admission, Plaintiff's daughter reported that Plaintiff's alcohol use was "heavy."  Tr. at 19 (referring to Tr. 182), 184, 188.  However, in finding Plaintiff's alcohol abuse non-severe, the ALJ reasoned that, aside from this isolated episode, there was no indication that Plaintiff lost her ability to function as a result of alcohol abuse during the relevant period.  Tr. at 19.

---

[2] By definition, a TIA is a "temporary period of symptoms similar to those of a stroke," usually lasting "only a few minutes," without causing permanent damage. *See* https://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/symptoms-causes/syc-20355679.

This reasoning is borne out by the record.  Plaintiff notably did not allege any mental impairments when she filed for DIB in March 2017 or when she updated her list of medical conditions in May 2017 and in September 2018.  Tr. at 49, 121-22 (initially alleging disability due to back problems, an irregular heartbeat, right hand damage, high blood pressure, and asthma, and a "stroke" that occurred in 2013 or earlier but no mental impairments), 152, 169.  Indeed, aside from her isolated hospitalization, Plaintiff neither complained of nor displayed signs of any mental impairment during her medical exams.  *See* Tr. at 247-48 (noting no mental symptoms on January 11, 2012); 253-54 (on September 28, 2012, reporting no mental symptoms; normal orientation, mood, and affect); 256 (same on October 5, 2012); 260 (no mental symptoms reported; normal orientation observed on November 26, 2012); 264 (same on January 7, 2013).

At her hearing in May 2019, Plaintiff stated that she was not receiving treatment for mental health issues, although she stated that she was prescribed medication for stress.  Tr. at 43.  Consistent with Plaintiff's testimony, the record reflects that Plaintiff received no treatment from a therapist, psychologist, psychiatrist, or social worker during the relevant period, and was only prescribed medication for anxiety several years later.  Specifically, Plaintiff first complained of anxiety to her primary care physician in May 2018, almost five years after the relevant period.  Tr. at 323.  In a follow up with her doctor approximately three months later, Plaintiff demonstrated depressed mood and affect and her provider prescribed sertraline.  Tr. at 328.

This evidence does not meet Plaintiff's burden to show that her mental impairments lasted for a continuous period of at least 12 months prior to December 31, 2013, her date last insured.  See 42 U.S.C. § 423(c)(1), (d)(1)(A); 20 C.F.R. §§ 404.130, 404.315(a); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d. Cir. 1989) (stating that to be eligible for benefits, a claimant must be insured and must have been disabled during the insured period).  Under the circumstances, the ALJ reasonably concluded that Plaintiff's alcohol abuse was not a severe impairment (Tr. at 19), and that Plaintiff did not otherwise suffer from mental impairments during the relevant period.

Plaintiff argues that the ALJ erred in rejecting the opinion he solicited from non-examining psychiatric expert, Dr. Rita Clark.  Tr. at 442-49.  Dr. Clark opined in June 2019 in response to the ALJ's interrogatories that Plaintiff had some mild limitations in mental functioning and could do "something simple within physical capacity."  Tr. at 46, 447, 449.  The ALJ assigned Dr. Clark's opinion little weight because it was unsupported and internally inconsistent.  Tr. at 22.  This was entirely appropriate.  The weight given to non-examining medical sources depends "on the degree to which they provide supporting explanations for their medical opinions," and specifically, "the degree to which theses medical opinions consider all the pertinent evidence in [the] claim."  20 C.F.R. § 404.15627(c)(3).

Dr. Clark herself explicitly noted that there were no psychological records and, therefore, there was insufficient objective medical evidence to allow her to opine on the nature and severity of Plaintiff's impairment(s) during the relevant period several years prior.  Tr. at 446.  Despite the lack of evidence, Dr. Clark proceeded to rate

8

Plaintiff's functional abilities, first stating that Plaintiff had no limitations in understanding, remembering, and carrying out instructions (Tr. at 442), then, elsewhere in direct contradiction, stating that Plaintiff had mild limitations in understanding, remembering, or applying information and in other functional areas.  Tr. at 447.  Dr. Clark failed to provide record citations supporting her ratings despite being asked.  Tr. at 447 (leaving blank the "[c]ite the exhibit and page number that supports your opinion" section).

Dr. Clark vaguely stated that Plaintiff "does not follow medical instructions" referencing Exhibits 8F and 10F of the medical record.  Tr. at 443.  However, these records do not support a finding that Plaintiff had a mild limitation in interacting with others.  Exhibit 8F indicates that Plaintiff failed to attend four physical therapy appointments, resulting in her discharge from the program.  Tr. at 397.  However, Plaintiff's absences could be attributed to any number of causes unrelated to her ability to understand or remember.  Exhibit 10F consists of imaging results with no indication that Plaintiff was given medical instructions and failed to follow them.  Tr. at 409-419. As such, the ALJ reasonably concluded that Dr. Clark's opinion was unsupported and inconsistent, and therefore entitled to little evidentiary weight.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that opinion."), (c)(4) ("The more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Plaintiff argues that the ALJ erred in giving little weight to Dr. Clark's opinion because hers was the only medical opinion in the record. Tr. at 13-1, p. 10. This Court does not agree. The ALJ had legitimate reasons for rejecting Dr. Clark's opinion, and his severity reasoning is sound on its face and despite the fact that it is not supported by a medical opinion. "[A]n ALJ's step two determination is not the product of legal error when formulated absent a medical source opinion. … An ALJ's decision at step two, like all of the ALJ's determinations, must be 'supported by 'substantial evidence' in the record as a whole.'" *Jennifer E. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1122 (WBC), 2020 WL 6803037, at *4 (W.D.N.Y. Nov. 19, 2020) (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. Jan. 8, 2017). Accordingly, this Court finds that remand is not warranted on this basis.

**Physical Impairments**

The ALJ properly found that Plaintiff's knee injury was not severe because it did not last more than twelve months. As the ALJ noted, Plaintiff first complained of right knee pain in November 2011. Tr. at 20 (referring to Tr. at 241-44). At a follow-up appointment approximately one week later, Plaintiff displayed an antalgic gait as well as tenderness and swelling in the right knee. Tr. at 20 (referring to Tr. at 243, 246). Plaintiff was prescribed a cane, ibuprofen, and pain-relief gel. Tr. at 243, 246. Plaintiff's x-ray indicated no fracture, but Plaintiff's provider suspected a meniscal tear due to a positive McMurray's test and the location of Plaintiff's pain. Tr. at 20, 246, 248-49. Plaintiff was referred to physical therapy. Tr. at 20, 248.

Although there is no record of Plaintiff attending physical therapy during the relevant period, Plaintiff's knee condition apparently improved after January 2012. By late September 2012, Plaintiff had no musculoskeletal complaints and had normal gait and station. Tr. at 20 (referring to Tr. at 252-53). This remained the same through the end of the relevant period. See Tr. at 255-56 (treatment note dated October 5, 2012), Tr. 258-60 (treatment note dated November 26, 2012). Plaintiff did not complain of knee pain again until March 2019, many years after the date she was last insured. Tr. at 20 (referring to Tr. at 402). Thus, substantial evidence supports the ALJ's finding that Plaintiff's right knee injury did not result in symptoms, let alone functional limitations, for a continuous period of at least 12 months during the relevant time frame. Tr. at 20; 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. § 404.1509 (12-month duration requirement).

The ALJ also found that Plaintiff's right hand injury was not severe because her associated symptoms resolved quickly and therefore, like her knee injury, did not meet the 12-month durational requirement. Tr. at 20-21. As the ALJ noted, Plaintiff reported hand pain stemming from a prior fracture in November 2011. Tr. at 20 (referring to Tr. at 241-42). A right hand x-ray taken on December 1, 2011, showed "scattered mild degenerative changes" at some joints, as well as a healed fracture in a finger bone. Tr. at 20-21 (referring to Tr. at 296). However, Plaintiff did not report hand pain at a medical appointment five days later or at her subsequent appointment in January 2012. Tr. at 21 (referring to Tr. at 245). As the ALJ correctly observed, "there are no other reports of hand pain or associated symptoms until well after the claimant's date last insured," specifically, until March 2017. Tr. at 21, 49. Thus, Plaintiff's right

11

hand injury was too short-lived to qualify as a severe impairment.  *See* 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. §§ 404.1509, 404.1522.

Although Plaintiff suffered from hypertension, she took medication for this condition and by her own account, was largely asymptomatic during the relevant time frame.  Tr. at 19-20.  Plaintiff was noted to have high blood pressure when she was hospitalized for a TIA in September 2012.  Tr. at 19 (referring to Tr. at 184).  At a follow-up appointment the same month, Plaintiff was prescribed Lisinopril to control her blood pressure and this prescription was extended through April 2013.  Tr. at 19 (referring to Tr. 252-54); Tr. at 263 (prescription dated November 2012 included five monthly refills).  Providers recorded high blood pressure numbers during all of Plaintiff's other medical appointments during the relevant period.  Tr. at 246 (Jan. 11, 2012), 256 (Oct. 5, 2012), 259 (Nov. 26. 2012), 263 (Jan. 1, 2013), 267 (Jan. 16, 2014).

Despite consistent high blood pressure, Plaintiff only twice reported symptoms or difficulties as a result.  For example, Plaintiff complained of a headache in September 2012, and some shortness of breath on exertion in January 2013.  Tr. at 20 (referring to Tr. at 254, 262).  In other circumstances, Plaintiff's symptoms were attributed to another cause.  In January 2014, Plaintiff's blood pressure was uncontrolled because she failed to take her medication due to a lapse in insurance.  Plaintiff's doctor concluded that her shortness of breath, wheezing, and productive coughing resulted from an acute upper respiratory infection, rather than from hypertension.  Tr. at 20 (referring to Tr. at 268).  Thus, substantial evidence supports the ALJ's finding that Plaintiff's hypertension did not result in functional limitations.

Indeed, there is no evidence in the record that Plaintiff's hypertension significantly impacted her ability to do basic physical work activities such as walking, sitting, standing, lifting, and carrying.  See 20 C.F.R. § 404.1522(b).  Plaintiff has not met her burden of proving that her hypertension was more severe than the ALJ determined.

As the ALJ noted, Plaintiff was hospitalized in September 2012 for a TIA, after she went to the emergency room with complaints of left-sided facial and arm numbness, slurred speech, headaches, and intermittent eye wandering.  Tr. at 21 (referring to Tr. at 182, 250-51).  In finding that Plaintiff's TIA was not severe, the ALJ recognized that Plaintiff did not experience lasting brain damage, and that her TIA symptoms did not return after her hospitalization.  Tr. at 21, 184 (noting at discharge that "MRA, carotid doppler, [and] CT head were unrevealing.").  Moreover, Plaintiff did not have any signs, symptoms, or lingering effects of TIA at any medical visit after her hospital discharge.  Tr. at 21 (referring to Tr. at 252-53, 256, 260, 262 (medical appointments on Sept. 28, 2012, Oct. 5, 2012, Nov. 16, 2012, Jan. 7, 2013), 266-27 (appointment on Jan. 16, 2014).  Thus, substantial evidence supports the ALJ's finding that Plaintiff's TIA was not severe during the relevant period because its effects were short-lived, and it did not result in functional limitations for a continuous period of at least 12 months.

The ALJ correctly found that Plaintiff's medically determinable impairment of asthma was not severe.  There was no evidence that Plaintiff's asthma impacted her ability to perform basic work activities.  Tr. at 19.  The ALJ acknowledged that Plaintiff was diagnosed with asthma and was taking asthma medication as of September 2012.

13

Tr. at 19 (referring to Tr. at 187). However, as the ALJ noted, Plaintiff's physical examinations during the relevant period observed her lungs to be clear to auscultation, with no signs of respiratory distress. Tr. at 19 (referring to Tr. at 242, 252-53, 260 (examinations on Nov. 20, 2011, Sept. 28, 2012, Nov. 12, 2012.); *see also* Tr. at 183, 187, 247, 251, 256, 260, 264.

Plaintiff complained only twice of respiratory symptoms, which were attributed to causes other than asthma. In January 2013, Plaintiff noted that she had some coughing and shortness of breath on exertion, such as climbing three or four flights of stairs. However, on examination, Plaintiff displayed no respiratory symptoms, and the provider attributed Plaintiff's occasional discomfort to her smoking habit, rather than asthma. Tr. at 19 (referring to Tr. at 262-64). The ALJ noted that Plaintiff had flu-like symptoms in January 2014, shortly after the close of the relevant period, with a cough and decreased air entry into the lungs on examination. These issues were ultimately attributed to an upper respiratory infection, not asthma. Tr. at 19 (referring to Tr. at 266-28). Thus, substantial evidence supports the ALJ's finding that Plaintiff's asthma was not severe during the relevant period.

**Sufficiency of the Record**

Plaintiff argues that this case must be remanded for a retrospective medical opinion. This Court does not agree. An ALJ must "affirmatively develop the record in light of the essentially nonadversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (citations and alterations omitted). However, "[t]he ALJ is not required to develop the record any further when the

14

evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018); *see also Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). An ALJ has discretion to determine whether a claimant's record needs further development and, if it does, how it should be supplemented. 20 C.F.R. § 404.1520b(b).

Having reviewed the record in its entirety, this Court finds that it was sufficiently developed for the ALJ to determine whether Plaintiff's alleged impairments were debilitating or lasting enough as to render her disabled. It is Plaintiff who bears the ultimate burden of demonstrating that her functional limitations preclude her from performing any substantial gainful activity. *See, e.g.*, 20 C.F.R. § 404.1514 ("We need specific medical evidence to determine whether you are disabled or blind. You are responsible for providing that evidence."). It bears noting that at the hearing, Plaintiff's counsel stated that the record was complete, except for new imaging reports and a medication list that Plaintiff brought to the hearing. Tr. at 32-33; *see also* Tr. at 175 (Plaintiff's attorney notified the ALJ that she would re-file those new documents as they had been inadvertently excluded from the electronic file). The ALJ then advised that he would obtain an opinion from a psychiatric expert, because Plaintiff had no record of mental health treatment. Tr. at 43, 46. As promised, the ALJ sought Dr. Clark's expert opinion on Plaintiff's mental condition. Tr. at 420.

The ALJ subsequently determined that the record, including Dr. Clark's opinion, was complete enough for him to make a disability determination. That decision, committed to the ALJ's discretion, was reasonable under the circumstances.

*See* 20 C.F.R. § 404.1520b; *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 110 (2d Cir. 2020) (holding that ALJ was not faced with "any clear gaps in the administrative record" that gave rise to an affirmative obligation to seek a medical opinion); *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (holding that administrative ALJs are to seek supplementation of the record only when they deem it necessary).  The fact that the ALJ rejected Dr. Clark's opinion does not mean that there was not substantial evidence supporting his determination that Plaintiff's impairments were not severe. *Tammy C.J. v. Comm'r of Soc. Sec.*, 1:19-cv-1552-EAW, 2021 WL 773414 at *3- 4 (W.D.N.Y. Feb. 26, 2021) (holding that the ALJ did not err in concluding that Plaintiff's left shoulder injury was non-severe despite the fact that there were no medical opinions in the record addressing the left shoulder injury).

Plaintiff's treatment record does not show that her alleged impairments caused more than minimal limitations in her ability to perform work-related functions for 12 months or more.  To the contrary, the record plainly shows that Plaintiff's symptoms were mild or did not last more than a few months.  As such, there was no need to supplement the record.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**." *Brault*, 683 F.3d at 448

(emphasis added).  This case does not present such a situation; not even remotely.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:	Buffalo, New York
	March 2, 2022

			*s/ H. Kenneth Schroeder, Jr.*
			**H. KENNETH SCHROEDER, JR.**
			**United States Magistrate Judge**